## School Board of Southampton Township School District Petition

*William R. Mark*, for petitioners.
*Hermas L. Weary*, contra.

SHUGHART, P. J., June 25, 1958.—The County of Cumberland has completed and established a permanent system of records of property as required by the Act of May 21, 1943, P. L. 571, and its amendments, 72 PS §5453 et seq. The first county assessment of real property under the system and at values based upon a resolution dated November 21, 1957 was made for the year 1958.

Section 602 of the Act of 1943, as amended, 72 PS §5453.602, provides that when a school district levies its real estate taxes on the assessment as fixed

under the Act of 1943 for the first time, the total amount of taxes levied for that year against the real properties contained in the duplicate for the preceding year shall equal not more than 110 percent of the total amount it levied on such properties the preceding year, notwithstanding the increased valuations of such properties under the new assessment system. Stating it another way, the school district is prohibited from increasing the tax levy on property taxed the previous year by more than 10 percent.

Section 602 of the act, as amended, further provides as follows:

"With the approval of the court of common pleas, upon good cause shown, any such political subdivision may increase the tax rate herein prescribed, notwithstanding the provisions of this paragraph."

The School Board of the School District of Southampton Township filed a petition for the approval of a tax increase in excess of that prescribed by the act. An order was entered fixing a hearing on the petition for May 5, 1958, which hearing was continued to May 28, 1958. Notice of the hearing was given by publication in the News-Chronicle, of Shippensburg, a newspaper of general circulation in the township, and in the Cumberland Law Journal.

The hearing was held as scheduled, at which time the court heard the testimony of Clare A. Kerns, president of the school board, Eugene H. Sheely, a certified public accountant hired by the board, and Walter B. Reddig, secretary to the joint school district of which Southampton is a part. One taxpayer, Lewis E. Willis, was represented by counsel of record who questioned the various witnesses, and several spectators were present in court all of whom declined the invitation of the hearing judge to offer testimony in regard to the matter before the court.

From the evidence produced at the hearing, we make the following

## Findings of Fact

1. The assessed evaluation of the real estate of the township for the year 1957 was $911,972, and for the year 1958 $1,482,100

2. The increase in evaluation resulted principally from the increased assessments of existing property.

3. The rate of taxation for the six years prior to 1957 was as follows:

| | |
|---|---|
| 1951-52 | 13 mills |
| 1952-53 | 15 mills |
| 1953-54 | 18 mills |
| 1954-55 | 20 mills |
| 1955-56 | 20 mills |

4. The school district is and has been a member of the Shippensburg Area Joint School System for several years.

5. As of April 30, 1958, the expenses for the years 1951 to 1958 are $36,398.52 in excess of the receipts.

6. The board, as of the date of hearing, owed to the joint school system $45,190.28 to complete payments for the year 1957-58.

7. The estimated income during the remainder of 1957-58 will be $14,431.98.

8. There will be an estimated accumulated deficit (1951-58) at the end of the school year 1958 of $67,-156.82.

9. This deficit has not been incurred in one year but is an accumulation of deficits in the several years preceding.

10. A part of this deficit is presently represented by temporary loans totaling $26,900. The balance must be met by further temporary loans of roughly $41,000.

11. At the end of the present fiscal year the district will have temporary loans represented by bank notes

of approximately $67,156.82 to cover the accumulated deficits over the years.

12. A comparison of actual receipts and expenditures shows that the expenditures exceeded receipts for each of the years 1951-52, 1952-53, 1953-54, 1954-55, 1955-56, but not 1956-57.

13. Over the period from 1951-58 the various budgets show a budgetary balance of receipts over expenditures of $41,456.29, whereas over the same period there was an actual total of expenditures *over* receipts of $36,398.52 to April 30, 1958.

14. One of the causes for the deficits in the various years was the overestimation of the amount of income and the underestimation of the amount of expenses in the years in question in the various budgets prepared.

15. A portion of the deficit must be laid to the failure of the board to increase the mill rate to 23 mills for the years 1951-52, 1952-53, 1953-54, 1954-55, 1955-56, as suggested by the bonding company for the jointure.

16. There is no evidence that there was any misappropriation of funds during the period 1951-58, but rather an unwillingness on the part of the various school boards to increase the tax rate to meet expenditures.

17. As a member of a jointure the expenditures of the school district are largely fixed and inflexible.

18. The proposed expenditures and estimated receipts set forth in the proposed budget of the district are as follows:

| | |
|---|---|
| General Control | $4,340.00 |
| Fixed Charges | 180.00 |
| TOTAL CURRENT EXPENSES | $4,520.00 |
| Payments to Joint Board or Boards of which the District is a Member | 188,676.77 |

TOTAL CURRENT EXPENSES IN-
CLUDING PAYMENT TO JOINT
BOARD .....................$193,196.77
Debt Service .....................  32,876.72
Capital Outlay  Debt Service-Retire-
ment of Temp. Loan ...........  67,500.00
_____

TOTAL PROPOSED EXPENDITURES . $293,573.49
Balance on hand July 7, 1958.  All
funds, exclusive of Sinking Fund..    0,000.00
Property Tax, 1958, $1,482,100.00 x 35
mills .........................  51,873.50
Per Capita tax 1958 under Section
679, $5 x 1087 x 80% ............  4,348.00
Per Capita tax 1958 under Act 481
of 1947, as amended ...........   4,348.00
Other taxes—Indicate source and at-
tach  schedule — Realty  Transfer
Tax, Stone Tax, Wage & Profits
Tax .........................   9,700.00
Delinquent tax (previous to 1958) ...    500.00
State appropriation ..............  162,974.76
Tuition—nonresident pupils, Tempor-
ary Loan .....................  52,056.23
Interest, Forests & Waters .......    273.00
All other sources.  Indicate source and
attach schedule P. L. 874 ........   7,500.00
_____

TOTAL  RECEIPTS.  INCLUDING
BALANCE ON HAND JULY 7,
1958 ....................$293,573.49

19. No evidence was introduced to show that the proposed expenditures for the year 1957-58 of $293,-573.49 were excessive, that any improper items were contained therein or that the total could be properly reduced.

20. The mill rate for the year 1957 was 35 mills on an assessed evaluation of $911,972, producing an estimated return in taxes of $31,919.02.

21. The total permissible tax levy on real estate under the Act of 1943 without court approval would be 10 percent in excess of $31,919.02 ($3,191.90) or a total levy of $35,110.92.

22. To produce $35,110.92 in taxes, a levy of 23.69 on an assessed evaluation of $1,482,100 would be required.

23. The proposed 35 mill levy on $1,482,100 would produce an estimated $51,873.50 in taxes as set forth in the proposed budget above.

24. The proposed levy would be an increase over the levy of 1957-58 of 62.5 (plus) percent instead of 10 percent prescribed by the act.

25. A levy of 23.39 mills would result in a budgetary deficiency of receipts for the year 1958-59 of approximately $1,000 as shown by the proposed budget introduced in evidence.

26. The proposed levy of 35 mills would produce sufficient revenue to meet expenditures for 1958-59, and in addition allow the retirement of approximately $15,-000 (roughly 20 percent) of the temporary loans totaling $67,500.

27. In addition to the realty tax levy, the board proposes a one percent real estate transfer tax; a one percent stone tax; a $5 per capita tax; a $5 residence tax; a one percent wage and property tax.

28. An amusement tax would not be productive of revenue due to the lack of taxable places of amusement located in the district.

29. There is a trailer tax in existence under the levy of the township supervisors.

30. There is no evidence that the board has any other possible avenues of taxation that they have failed to use.

31. The reduction of 20 percent of the temporary loans would make possible the repayment of the temporary loans over a five year period which is the same period over which the deficits necessitating the loans were accumulated.

## Discussion

Counsel has cited no cases nor has our own research revealed any reported cases construing the provision of section 602 of the Fourth to Eighth Class County Assessment Law here involved. A similar provision regarding a levy of additional millage with court approval is contained in section 905 of the Second Class Township Code of May 1, 1933, P. L. 103, as amended, 53 PS §65905, and also in section 1301 of the Borough Code of July 10, 1947, P. L. 1621, prior to the last amendment by the Act of May 15, 1956, P. L. (1955) 1583, 53 PS §46301, see Act of July 19, 1951, P. L. 1026. Each of these acts provides in substance that by majority action upon due cause shown, the supervisors or borough councils as the case may be, may petition the court of quarter sessions for "the right to levy additional millage" above the rate fixed in the statute. It will be noted that the language employed here "with the approval of the court of common pleas, upon good cause shown" is substantially the same as that used in the acts referred to above. For this reason the decisions construing the provisions of the Borough Code and the Second Class Township Code are pertinent in this case.

The power and authority of taxation and finance in regard to the business of the various school districts rests exclusively in the school board, the duly elected representatives of the people. However, the general authority of the court to deal with the fiscal matters of local government has been recognized by our appellate courts: Lower Nazareth Township Supervisors'

Appeal, 336 Pa. 250. The statute here involved authorizes court approval of the increased tax rate only upon due cause shown. The action of the court is permissive rather than mandatory. In such a situation it has been held that whether or not an application should be granted is a matter for the sound discretion of the court and the burden rests with the taxing body to demonstrate by the preponderance of the evidence due and reasonable cause justifying the tax increase: Norristown Borough Petition, 81 D. & C. 538, 541; Lower Makefield Township Application, 12 D. & C. 2d 19, 21, and cases cited.

We must, therefore, determine if the burden has been met. It is well to state that counsel for the taxpayer offered to present to the court petitions opposing the increase, but no testimony was offered attacking the propriety or justification for the increase in tax rate, although the hearing judge invited any and all parties who were present to offer such testimony. Likewise, no argument was presented to the court against granting the prayer of the petition. The court, therefore, has before it only the uncontradicted testimony offered by the petitioners.

It is deserving of note that Eugene H. Sheely, the certified public accountant employed by the board, presented a complete and comprehensive statement of the financial affairs of the district since 1951. From his report it is apparent that for the years 1951-56 the various boards, which included only two of the five members of the present board, showed an actual operating deficit at the end of the year. The principal purpose of the present petition is to enable the board to begin to repay the loans made necessary by these operating deficits.

As a member of the jointure, the expenditures of the district do not present the flexibility present in the expenditures of governmental subdivisions generally.

There was no evidence to show that any of the expenditures listed in the budget could be curtailed. The budget can only be balanced, therefore, by raising the revenue.

If no increase is permitted, the budget for the ensuing year of 1958-59 will show an operating deficit.

It is highly desirable that a start be made to put the budget in balance and, therefore, some increase in the authorized tax rate is essential. Permission to increase the rate sufficiently to balance the budget will merely postpone the time when the taxpayers begin to repay the deficits accumulated over the years. This course of action, while relieving the taxpayers currently, will fall with added impact upon them next year when the board will not be under the statutory restraint, since the statutory limitation on the tax rate applies only when the board "for the first time levies its real estate taxes on that first assessment or valuation".

It has perhaps been too long a general governmental policy to postpone living within its revenues. It ill-behooves the court to strike down the efforts of a school board directed toward living within its income and reducing its prior operating deficits.

The board has demonstrated beyond doubt the need for some increase over the prescribed limit. The question remains as to how much increase should be permitted. While there might be room for a difference of opinion as to how much increase should be permitted where the need therefor has been shown, we feel disinclined in this case to attempt to substitute our judgment for that of the school directors who are directly responsible to the people. The need for the payment of added tax now in this case results because the people of this district have for several years paid less than they should have paid. The plan to increase the levy to repay the loans necessitated by operating deficits in five years appears justified because it was over a

like period of five years that these deficits were accumulated.

If the debt created by the operating deficits were the only obligations of the district, we would be inclined perhaps to refuse the prayer of the petition  The sum of $188,676.77, shown in the budget for 1958-59 as payment to the joint board, is rental for school facilities which were financed through a school authority. While the obligations financing these buildings are not directly those of the district, it is obvious that tax revenue from the district is one of the principal sources of funds for repayment. This situation distinguishes this case from those cases where a tax increase for the repayment of indebtedness was refused. In re Funding Bonds of Luzerne Township, 11 Fayette 132; Lower Makefield Township Application, supra.

We conclude that good cause has been shown for the tax increase prayed for and the approval of the same is granted.

And now, June 25, 1958, at 12:05 p.m., for the reasons given in the foregoing opinion, the prayer of the petitioners to increase the real estate tax rate of the Southampton School District to 35 mills for the year 1958-59 be and is hereby granted and approved.